UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RONALD COOPER,

Plaintiff,

DECISION AND ORDER

-v-                                                          08-CV-6238 CJS

ROBERT DENNISON, former chairperson of the
NYS Div. of Parole, et al.,

Defendants.

_____

## INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 in which Plaintiff Ronald Cooper

("Plaintiff") alleges, *inter alia*, that the defendants violated his federal constitutional rights

in connection with his parole supervision.   Now before the Court are the following

applications: 1) Defendants' motion to dismiss (Docket No. [#13]); 2) Plaintiff's cross-

motion [#21] to amend the complaint; and 3) Plaintiff's motion [#32] for the appointment

of counsel.  For the reasons that follow, Plaintiff's motions are denied, Defendants' motion

is granted, and this action is dismissed with prejudice.

## BACKGROUND

In setting forth the factual background of this action, the Court observes that it is

limited as to what evidence it can consider in ruling upon a 12(b)(6) motion:

> In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint
> for failure to state a claim on which relief can be granted, the district court is
> normally required to look only to the allegations on the face of the complaint.
> If, on such a motion, matters outside the pleading are presented to and not
> excluded by the court, the court should normally treat the motion as one for
> summary judgment pursuant to Fed.R.Civ.P. 56.  In any event, a ruling on
> a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the
> court to make findings of fact.

> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.  In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotation marks omitted).[1]  In the instant case, in deciding the pending motions, the Court will consider a number of documents that, while not part of the Amended Complaint, are arguably incorporated by reference, and were clearly integral to the complaint and relied upon by Plaintiff, including letters that Plaintiff wrote to the Division of Parole, and transcripts of sworn testimony by Plaintiff at the parole revocation hearings described in the Amended Complaint.[2]  The Court notes that these documents were not available to the Court when it  previously reviewed Plaintiff's complaint pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(a). *See*, Decision and Order [#8] (Telesca, J., *Pro Se* Duty Judge).   Presumably, if such documents had been available to the Court at that time, it would have dismissed the action, as the Court does now.

---

[1]*See also, Cortec Industries, Inc. v. Sum Holding L.P.*,  949 F.2d 42, 47 (2d Cir. 1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.") (citations omitted); *Kamholtz v. Yates County*, 350 Fed.Appx. 589, 592, 2009 WL 3463481 at *2 (2d Cir. Oct. 29, 2009) ("When the plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.") (citation and internal quotation marks omitted); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578, 581 (W.D.N.Y.,2000) ("[A] plaintiff should not be permitted to survive a motion to dismiss and put a defendant to the trouble and expense of discovery simply by excluding highly relevant facts and documents from its complaint."), *aff'd* 229 F.3d 1135 (2d Cir. 2000) (table), *cert. den.* 532 U.S. 1037 (2001).

[2]Consequently, unless otherwise noted the following facts are taken from Plaintiff's Amended Complaint [#6] and Proposed Second Amended Complaint [#21-1], as well as his letters to the Division of Parole, and transcripts of his parole revocation hearings, which are attached as exhibits to Defendants' motion to dismiss.

In 1982 Plaintiff was convicted of two counts of robbery in the first degree and one count each of criminal possession of a weapon in the second and third degrees, in New York State Supreme Court, Monroe County, for which he was given an indeterminate prison sentence of fifteen to thirty years. *See, People v. Cooper*, 152 A.D.2d 939, 543 N.Y.S.2d 831 (4th Dept. 1989).  In or about December 1996, Plaintiff was paroled.  Plaintiff spent the next eight years on parole.  While it is not necessarily significant to this case, the Court notes that apparently during that period, Plaintiff requested early termination of parole supervision several times, but his requests were denied because of his continued drug usage.  (Docket No. [#15] at 20).

In or about April 2005, while Plaintiff was still on parole, his brother helped him briefly obtain a job as a maintenance worker at the "Charter School of Science" on St. Paul Street  in Rochester.[3]  Plaintiff was terminated from that job after bringing a nude picture of himself to the school and showing it to a female co-worker.  According to Plaintiff, he "befriended a female co-worker, who expressed interest in [him]." Amended Complaint at 6.  Moreover,

> [a]s Plaintiff and this co-worker exchanged conversations, she explained to Plaintiff that she was having marital issues with her husband, to which Plaintiff explained that he had a website for 'swinging singles' and invited her to view it.  Plaintiff also explained that he had photos of himself, some of which were naked, on this website.  She then asked Plaintiff to bring her a photo the next day, to which Plaintiff agreed to. [sic]  Plaintiff brought this photo, and after meeting with this woman, and showing her the photo in a private area of the school, she left, and moments later, Plaintiff was summoned to the Vice Principal's Office.

---

[3]Presumably Plaintiff is referring to the Charter School of Science & Technology, which was located at 690 St. Paul Street in Rochester, and which closed in 2005.

*Id*.  Plaintiff was fired from his job and charged with aggravated harassment.  Plaintiff did not notify his parole officer of the incident or his arrest, and as a result he was charged with a parole violation. *Id*. at 7 ("[I] was taken into custody by Parole Officers for allegedly violating rules and regulations mainly for not notifying [my] parole officer of the arrest.").  Plaintiff pled guilty to aggravated harassment and received a sentence of time served.  On June 24, 2005, Plaintiff was released from jail and restored to parole supervision.

As a condition of his restoration to parole supervision, Plaintiff was required to report to Monroe County's Day Reporting Center each day, and to obtain passes to allow him to go on job interviews. *Id*. at 8.  Defendant Gina Pritchett ("Pritchett") was the Director of the Day Reporting Center.   In addition to having to report to the Day Reporting Center, Plaintiff's parole officer, Defendant Amy Cummiskey ("Cummiskey"), also set additional special conditions of release,   which Plaintiff describes as "2 full pages of Special Conditions that were tantamount to Plaintiff being classified as a sex offender." *Id*.  For example, Plaintiff could not have a vehicle, cell phone, pager, or computer. (Docket [#15] at 3-4).   Additionally, the special conditions required Plaintiff to have a psychological evaluation and to undergo sex offender counseling at the Evelyn Brandon Health Center ("Evelyn Brandon").  Plaintiff objected to the special conditions in general, but signed them in order to remain on parole. (Docket No. [#15] at 27: "I didn't think they [the conditions] fit me, but I accepted it.").   Notably, though, Plaintiff testified at a subsequent parole revocation hearing that he had no objection to attending psychological counseling at Evelyn Brandon. (Docket No. [#15] at 44: "I had no problem, no problem attending Evelyn Brandon."; *see also, id*.:  "And as far as going to Evelyn Brandon, I have no problems with

4

that."). Plaintiff further testified that while he did not agree with the conditions, he understood why they were imposed:

> Q. [Hearing Officer]: And the conditions basically require you to take part in an exploratory process to determine what issues you might have?
>
> A. [Plaintiff]: Okay.
>
> Q. [Hearing Officer]: Correct?
>
> A. [Plaintiff]: Yes, amongst some other things, for instance, I can't pick up a hitchhiker without first contacting my parole officer. I can't be outside a pornographic – I mean, these are things I don't do anyway but [I] think they're ridiculous.
>
> Q. [Hearing Officer]: You might think so but you understand the logic from [the] parole officer's perspective?
>
> A. [Plaintiff]: Sure, sure.   . . . .

(Docket No. [#15] at 44. Plaintiff also testified that he understood that the "sex offender" special conditions were imposed because he had shown the photo of himself to his female co-worker. *See, id*.

Subsequent to Plaintiff being reinstated to parole, Cummiskey made a visit to Plaintiff's apartment, during which Plaintiff walked past her in the nude. In that regard, at a subsequent parole revocation hearing, Plaintiff testified under oath that he was nude in his apartment, and that while in Cummiskey's presence, he walked out his bathroom with his hands covering his genitals, even though there were towels in the bathroom which he could have used to wrap around himself. (Docket No. [#15] at 35-36: "I was naked. I admit, I sleep nude.  . . .  I assumed she stepped out into the hallway.  . . .  I put my hands over my private parts because I didn't know if she was still standing there."; *id* at 43: "Yes, the towels were handing right there but it would have been the same if I had walked out with

5

a towel wrapped around [me].").  Plaintiff also testified that his underwear was in another part of the apartment, near his bed. *Id*. at 35 ("It was on the floor by my bed."), 42. However, in his unsworn Amended Complaint in this action, Plaintiff now maintains that he was *not* nude, and that Cummiskey lied about him being nude:

> Plaintiff opened the door, as he was *in his underwear*.  .  .  .  When Plaintiff emerged from the bathroom still in his underwear, Defendant Cummiskey claimed that Plaintiff appeared before her naked. .  .  .  Plaintiff states that this was not the case, as he never appeared naked in front of Defendant Cummiskey, and that she fabricated the entire incident.

Amended Complaint [#6] at 9.  Cummiskey reported the incident to Pritchett and to Plaintiff's therapist at the Evelyn Brandon Center, Gary Updyke ("Updyke").  Plaintiff, though, was not charged with any type of parole violation relating to the incident.

On July 21, 2005, Plaintiff wrote a letter to defendant Robert Dennison ("Dennison") who was the Chairman of the New York State Division of Parole.  In the letter, Plaintiff complained that Cummiskey had improperly imposed special conditions on him that were "tantamount to classifying [him] as a sexual offender/predator." (Docket [#15] at 16). Plaintiff stated: "There are a lot of other special conditions that are ridiculous, and have no bearing on the actual charge that I was originally convicted of, to wit:  robbery." *Id*. at 17. The same day, July 21, 2005, Plaintiff sent a second letter to Dennison, requesting that he be released from parole supervision. *Id*. at 18-19.  Dennison did not respond to the letters. Instead, on July 29, 2005, Felix Rosa ("Rosa"), Secretary to the Board of Parole, replied to Plaintiff's letters and informed him that he request for early release from parole supervision was denied. *Id*. at 20-21.

At around this same time, Plaintiff sent a "letter of complaint" to Defendant "Mr. Siracusa" ("Siracusa"), who Plaintiff identifies as the "Senior Parole Officer in Monroe County," complaining about Cummiskey and the special conditions of release. (Docket [#15] at 28-29).  Plaintiff stated that because of the "unfortunate incident" involving him showing the nude photo of himself to his female co-worker, Cummiskey mistakenly believed that he was a "raging sexual predator." *Id*. at 28.  Plaintiff stated that the incident was consensual, and had been "blown out of proportion." *Id*.   Plaintiff also objected to the fact that Cummiskey was unfairly preventing him from maintaining a job where he was being "paid under the table." *Id*.  Plaintiff further stated that Cummiskey had "harassed" him by improperly "coaxing" her way into his apartment while he was nude. *Id*. at 29 ("[B]ecause this is MY apartment, I am free to walk around that apartment naked, if I choose to, and this happened to be 1 of those days." [sic]).[4]  Plaintiff stated that the special conditions were unnecessary and that Cummiskey "either dislikes men, or has issues with the scope of her employment as a parole officer in that she feels she has something to prove." *Id*.  Plaintiff further stated that Cummiskey should be forced to have a psychiatric evaluation. *Id*.  There is no indication that Siracusa responded to the letter.  However, near this same time, and for reasons that are unclear, Plaintiff was assigned a new parole officer, Defendant Lewis Hrycko ("Hrycko").

On August 12, 2005, which was a Friday, Plaintiff notified Pritchett that he had a job interview that afternoon.  Pritchett gave Plaintiff a day pass and told him to report back to

---

[4]This letter is another admission that Plaintiff was in fact naked when Cummiskey visited his apartment, in contrast to his allegations in this action in which he maintains that Cummiskey fabricated the event.

the Day Center or leave her a message regarding his status.  Plaintiff maintains that he was hired for the job and told to report to work the following Monday morning at 7 am. Plaintiff indicates that following the job interview, he did not "get back home [until] well after 6 pm" on August 12th, at which time the Day Center was closed.  The following Monday, August 15, 2005,  Plaintiff left a voice message at the Day Center for Pritchett, at 4:45 am, telling her that he was going to work and would not be reporting to the Day Center. Plaintiff went to work and did not have further contact with the Day Center.  Later that day, Plaintiff went to the Parole Office and dropped off a letter addressed to Hrycko concerning the details of his job.  In the letter, Plaintiff asked Hrycko to speak to Pritchett about the fact that he could not report to the Day Center, and he also asked that the "sex offender conditions" be removed.  Plaintiff also did not report to the Day Reporting Center on August 16th or August 17th.

On August 17, 2005, Hrycko had Plaintiff arrested for violating the conditions of his parole, and specifically, for failing to report to the Day Center for three days.[5]  Amended Complaint [#6] at 10.  In that regard, Plaintiff's Amended Complaint states that Hrycko "arranged for two other [unidentified] parole officers to go to Plaintiff's place of employment" and arrest him. *Id*.  In this action, Plaintiff alleges that the unidentified parole officers who arrested him used excessive force, which caused him to be hospitalized for two days. *Id*.  The alleged excessive force consisted of applying handcuffs too tightly, which restricted Plaintiff's blood circulation.

---

[5]Hrycko also charged Plaintiff with failing to attend his mental health counseling on August 17th, however, that charge was later dropped because the appointment was for the same day that Plaintiff was arrested.

Plaintiff also contends that while he was being held in the Monroe County Jail, defendant Amy Hornsberger ("Hornsberger") incorrectly classified him as a suicide risk, placed him in restraints, and gave him anti-psychotic medication.  In that regard, Plaintiff vaguely states that Hornsberger concluded that he was a suicide risk after Plaintiff told her that he was "having some issues." Amended Complaint [#6] at 12.

The same day he was arrested, Plaintiff wrote another letter to Dennison, stating that he had a "good reason" for failing to report to the Day Center, namely, that he had obtained a job.  Plaintiff argued that the charges against him should not be sustained, since he had left a phone message for Pritchett and had dropped off a letter to Hrycko. (Docket [#15] at 22-23).  The letter did not allege any type of constitutional violation, nor did it allege that Plaintiff was mistreated in any way during his arrest or confinement.  It does not appear that Dennison responded to the letter.

At his parole revocation hearing, Plaintiff was found guilty and ordered back to prison for fifteen months.  Plaintiff maintains that he did nothing wrong and that the evidence against him was "mostly perjured and false." Amended Complaint [#6] at 10. During his prison stay, Plaintiff was monitored by the mental health staff, apparently due to Hornsberger's alleged mistaken classification of Plaintiff as a suicide risk.

On February 28, 2006, Plaintiff wrote another letter to Dennison, stating that he was improperly found guilty of violating his parole conditions, since based on the letter that he allegedly dropped off at the Parole Office, Hrycko should have notified Pritchett why he was not reporting to the Day Reporting Center. (Docket [#15] at 24-26).  Plaintiff also reiterated that the conditions of his parole had been unfair, and that he should be immediately released from prison. *Id*.  On March 16, 2006, Rosa responded to the letter,

9

and stated that he would forward Plaintiff's correspondence to the Facility Parole Office at Clinton Correctional Facility, where Plaintiff was housed. *Id*. at 27.

On or about November 6, 2006, Plaintiff was again released from prison on parole supervision.  Plaintiff was assigned a new probation officer, Parole Officer Poth ("Poth"), who imposed the same special conditions of parole, including those that Plaintiff characterizes as "sex offender conditions."   In December 2006, Poth and another parole officer, Defendant Douglas Rusinko ("Rusinko") visited Plaintiff's home at separate times and concluded that Plaintiff was away from home after curfew.  Plaintiff admits that Poth and Rusinko each went to his house and "got no answer," and therefore "assumed that Plaintiff was not in his residence." Amended Complaint [#6] at 11.  Rusinko subsequently obtained a parole violation warrant.  Following a hearing, Plaintiff was found guilty and sent back to prison for 18 months. *Id*. at 11.  According to Plaintiff, this parole violation was in retaliation for his complaints about the sex offender conditions.

While in prison, on May 30, 2008, Plaintiff commenced the subject action.  On July 3, 2008, Plaintiff was again released on parole supervision, subject to same special conditions as before.  On or about July 8, 2008, Plaintiff sent a letter to the new Chairman of the New York State Division of Parole, David Alexander ("Alexander"), who replaced Dennison, complaining about the special conditions and about the handling of his various parole violations.  There is no indication whether Alexander responded to this letter.

On October 16, 2008, Plaintiff met with his new parole officer, defendant Parole Officer Diamond ("Diamond").  Diamond issued Plaintiff a new set of conditions, which did not include the "sex offender conditions," and which did not require Plaintiff to attend mental health counseling.

On October 31, 2008, Plaintiff filed the Amended Complaint [#6] in this action, which purports to state thirteen causes of action under 42 U.S.C. § 1983, involving alleged violations of Plaintiff's rights under the 8th and 14th Amendments.  The causes of action are as follows : 1) a claim against Dennison for failing to investigate Plaintiff's complaints and allowing the other defendants to violate his rights; 2) a claim against Cummiskey for conspiring to violate Plaintiff's rights; 3) a claim against Cummiskey for defamation, for telling Plaintiff's pharmacist that Plaintiff was a sex offender; 4) a claim against Cummiskey and Pritchett for lodging false parole violations; 5) a claim against defendant Judith Cummins ("Cummins"), Administrative Law Judge, for violating Plaintiff's rights at two parole hearings; 6) a claim against Cummiskey, Hrycko, Cummins, and Siracusa, for conspiring to frame Plaintiff for parole violations; 7) a claim against Cummiskey and Pritchett, for conspiring to have Plaintiff attend "sex offender therapy" treatment; 8) a claim against Pritchett for providing false testimony at Plaintiff's second parole hearing; 9) a claim against Siracusa for failing to investigate Plaintiff's complaints against Cummiskey, and for conspiring with Cummiskey and Hrycko; 10) a claim against Hrycko for failing to "investigate" the letter that Plaintiff delivered to the Parole Office on August 15, 2005, concerning his new job; 11) a claim of excessive force against Rusinko, Hrycko, and the Rochester Police Officers who arrested Plaintiff on August 17, 2005; 12) a claim against all defendants for violating Plaintiff's "civil and constitutional rights"; and 13) a claim against Hornsberger for acting with deliberate indifference to Plaintiff's medical needs while he was in the Monroe County Jail.

On February 6, 2009, the Court reviewed the Amended Complaint pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(a), and dismissed all claims against Cummins, along

with several other claims.  The Court ordered that the following five claims could proceed: 1) "Plaintiff's claims regarding the allegedly unlawful policy to impose the Special Conditions despite the lack of relationship of the conditions to the crime of conviction and Dennison's failure to remedy"; 2) "Claims that the improper imposition of the Special Conditions of Parole violated his constitutional rights";  3) "Plaintiff's retaliation claims against the parole officers," including Pritchett; 4) "Plaintiff's claims alleging excessive force . . .  against Officers Rusinko and Hrycko"; and 5) the 8th Amendment deliberate indifference claims against Hornsberger. Order [#8].

The Court ordered the Clerk of the Court to cause the U.S. Marshal to serve the Summons and Amended Complaint on the Defendants. (Order [#8]).  Subsequently, the U.S. Marshal attempted to serve the defendants by mail, pursuant to New York CPLR § 312-a.  The Marshal served all of the Defendants in this manner, except Hornsberger.[6]  As to Hornsberger, the acknowledgment of service form that was mailed to her at the Monroe County Jail by the U.S. Marshal was returned undelivered, with a notation that she no longer works at the jail.  Hornsberger and Pritchett are employees of Monroe County. Despite apparently having been served, Pritchett has not answered or appeared in this action.  The remaining Defendants ("the New York State Defendants") are employees of the State of New York, and are represented in this action by the Office of the New York State Attorney General.

On April 9, 2009, the New York State Defendants filed the subject motion [#13] to dismiss, arguing the following points: 1) the official capacity claims seeking money

_____

[6]Pritchett *apparently* signed and returned the acknowledgment of service on March 17, 2009, though the signature is illegible.   (Docket No. [#11]).

damages are barred by the Eleventh Amendment; 2) the conspiracy claims should be dismissed, because the Amended Complaint does not plausibly plead a claim for conspiracy; 3) the claims against Dennison and Siracusa should be dismissed, since those defendants were not personally involved in the alleged constitutional violations; 4) the complaint does not state a claim for excessive force against Rusinko and Hrycko; and 5) the conditions of parole imposed were reasonable.

In response to Defendants' motion, Plaintiff filed a number of submissions.  First, Plaintiff requested that he be allowed to file a second amended complaint. (Docket No. [#18]).  Plaintiff later filed a "Supplemental Response" [#20], in which he alleges, *inter alia*, that after he was restored to parole supervision following the incident involving the photograph, unidentified "transporting parole officers" told him that they would "find a way" to have him sent back to prison. (Docket No. [#20] at 2).  Additionally, as to the two instances in which parole officers determined that he was not home after curfew, he stated that on the first occasion, he did not hear knocking at the door or the doorbell because he was working in his basement, and that on the second occasion, he was away from home babysitting for his "girlfriend's mother's" child, and that he was home by 11:00 p.m. *Id* at 3. Plaintiff admits, though, that his curfew was 9:00 p.m. *Id*. at 9.  Plaintiff also clarified that the "excessive force" about which he was complaining was that his handcuffs were applied too tightly, "cutting off circulation during the 8 mile ride from Henrietta, New York to the Monroe County Jail." *Id*.

Plaintiff also filed a Motion to Amend Complaint [#21] and Proposed Second Amended Complaint.  The proposed amended complaint omits Dennison and Hornsberger

13

as defendants, and purports to add two new defendants, Poth[7] and Parole Officer William Fortune ("Fortune").   Otherwise, the Proposed Second Amended Complaint essentially reiterates the same factual allegations set forth in the Amended Complaint.   Curiously though, with respect to the incident in which Plaintiff exposed himself to Cummiskey, Plaintiff has now changed his version of events yet again.   That is, he now maintains that when he came out of the bathroom, he had a towel wrapped around himself. Proposed Second Amended Complaint at ¶ E.   As mentioned earlier, such allegation is contrary to Plaintiff's prior sworn hearing testimony, and is also contrary to his prior pleadings.   Plaintiff also states that he does not know the names of the officers who allegedly applied his handcuffs too tightly. *Id*. at ¶ O ("names unknown at this time.").

Additionally, the Proposed Second Amended Complaint includes allegations concerning an incident in 2009 in which Plaintiff was again found guilty of violating his conditions of parole.   Specifically, he alleges that in February 2009, after he provided a suspicious urine sample, parole officers searched his apartment, while he was present, and discovered marijuana and a cell phone which Plaintiff had used to send a "naked" picture of himself to his "fiancee," and "XXX rated video box covers [concealed] in a ceiling." Proposed Second Amended Complaint [#21-2] at 9.   Plaintiff was again found guilty of violating parole and sent back to prison for one year. *Id*.   Plaintiff alleges that "some of the named defendants" participated in the search, but he does not specifically identify anyone by name. *Id*.

---

[7] Poth was mentioned in the Amended Complaint but was not listed as a defendant in the caption.  The Proposed Second Amended Complaint also lists Administrative Law Judge Judith Cummins as a defendant, even though this Court previously dismissed all claims against her on the grounds of judicial immunity.  Since Plaintiff has already been advised that he cannot sue Cummins, the Court does not address any claims against her.

Finally, the Proposed Second Amended Complaint appears to limit Plaintiff's claims to two: Conspiracy and Retaliation. Proposed Second Amended Complaint [#21-2] at 11. Specifically, he alleges that Cummiskey and Pritchett conspired to fabricate evidence against him, and that Dennison (who is not listed as a defendant elsewhere in the proposed pleading), along with Cummiskey, Hrycko, Poth, and Siracusa, retaliated against him. The proposed pleading seeks injunctive relief and monetary damages. Defendants oppose the proposed amendment, arguing that it would be futile, since the Proposed Second Amended Complaint still fails to state any claim upon which relief can be granted. *See*, Def. Memo of Law [#23]. Plaintiff subsequently filed a reply [#25] to Defendant's response to the Motion to Amend. And finally, Plaintiff recently filed a motion for the appointment of counsel [#32].

## DISCUSSION

Courts must freely give leave to amend pleadings "when justice so requires." FRCP 15(a)(2). Nevertheless, a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir.2009) (internal quotation marks omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, No. 03-7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished).

The applicable legal standard for determining whether a complaint is sufficient to survive a Rule 12(b)(6) motion is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon

> which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.), *reversed on other grounds, Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009).  When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

The legal principles applicable to claims brought under 42 U.S.C. § 1983 are similarly well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***

16

> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

At the outset, for the reasons previously set forth in the Court's November 18, 2010, Decision and Order [#31], Plaintiff's motion for appointment of counsel [#32] is denied. Further, Plaintiff's cross-motion to filed a Second Amended Complaint is denied on the grounds of futility. As discussed further below, neither the Amended Complaint nor the Proposed Second Amended Complaint states a plausible claim under Section 1983.

The Court agrees with Defendants that any claims for money damages against the Defendants in their official capacities are barred by the Eleventh Amendment, though claims for declaratory and injunctive relief are not. *Davis v. New York*, 316 F.3d 93, 101-102 (2d Cir. 2002). The Court also agrees that Plaintiff has failed to plausibly allege the required personal involvement in the alleged violations by Dennison, Siracusa, or Rusinko. *See, e.g., Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (Mere receipt of letters from the plaintiff did not demonstrate the requisite personal involvement). Moreover, the excessive force claim fails to allege an injury of constitutional magnitude and also fails to allege personal involvement by any Defendant in this action.

17

Moreover, Plaintiff has not plausibly pleaded that there was a conspiracy among the Defendants to violate his rights.  On this point, for claims alleging a conspiracy to violate one's civil rights under 42 U.S.C. § 1985(3), the pertinent legal principles are as follows:

> In order to state a conspiracy  claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  A § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citation and internal quotation marks omitted).  It is well-settled that vague or conclusory allegations of conspiracy are insufficient to state a claim under 42 U.S.C. § 1985. *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) ("As this Court has previously held, however, a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (citation omitted).   In this case, Plaintiff has offered only vague and conclusory allegations of a conspiracy.

Similarly, Plaintiff has not pleaded a plausible claim of retaliation, the legal standard for which is clear:

> In general, a section 1983 [retaliation] claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws.  We have confirmed that this principle applies in the prison context as well.  In order to state a claim for retaliation under section 1983, a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity.  To survive a motion

18

to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'

*Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (citations and internal quotation marks omitted).   Again, Plaintiff's allegations as to this claim are entirely conclusory.  Moreover, such claims are not plausible in light of the fact that Plaintiff admits that he violated his parole on each of the occasions about which he complains.[8]  That is, Plaintiff admits that he: 1) failed to report his arrest to his Parole Officer; 2) failed to report to the Day Reporting Center for three days; 3) failed to abide by his curfew; and 4) possessed marijuana.  Plaintiff has not provided any non-conclusory allegation that any of his parole violations were related to his prior complaints about the sex-offender conditions. *Cf., McCloud v. Kane*, 491 F.Supp.2d 312, 318 (E.D.N.Y. 2007) (Parolee stated retaliation claim against parole officer, where officer told Plaintiff that curfew was not necessary, but officer later imposed curfew after the parolee complained about the officer).

To the extent that Plaintiff claims that Defendants violated his constitutional rights by imposing special conditions, the Court also disagrees.  First, a parolee such as Plaintiff has no liberty interest in avoiding the imposition of special conditions of parole. *See, Pena v. Travis*, No. 01 Civ.8534 SAS, 2002 WL 31886175 at *13 (S.D.N.Y. Dec. 27, 2002) ("Because the imposition of special conditions is left to the discretion of the Board of Parole and parole officers, plaintiff does not have a protected liberty interest in being free from special conditions.") (citing  9 N.Y. Comp.Codes R. & Regs., tit. 9, § 8003.3).  And second, the so-called "sex offender" special conditions were reasonable under the circumstances

---

[8]Plaintiff admits that he failed to report his arrest for aggravated harassment to his parole officer; failed to report to the Day Reporting Center; possessed marijuana; and failed to abide by his curfew.

presented by this case, which include Plaintiff's showing nude pictures of himself to a female co-worker and exposing himself to Cummiskey. *See, Bostic v. Jackson*, No. 9:04-CV-676 (NAM/GJD), 2008 WL 1882696 at *2 (N.D.N.Y. Apr. 24, 2008) ("Restrictions upon the First Amendment rights of parolees are valid as long as the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose of imprisonment.") (citations omitted); *see also, Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972) ("The restriction here involved is reasonably and necessarily related to the Government's legitimate interests in the parolee's activities and thus does not violate the first amendment.").

Finally, the Court finds that the purported claim against Hornsberger, for deliberate indifference to a serious medical need in violation of the Eighth Amendment, fails to state a claim.  In that regard, it is well settled that mere differences of opinion as to medical treatment are not actionable under Section 1983. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (Holding that a "mere difference of opinion over a matter of medical judgment" does not constitute deliberate indifference.).  Here, Plaintiff alleges only that he told Hornsberger that he was having unspecified "issues," and that she placed him on a suicide watch as a precaution.  Plaintiff's belief that he should not have been placed on suicide watch does not state an 8th Amendment claim, and consequently such claim does not survive review under 28 U.S.C. § § 1915(e)(2)(B) and 1915A(a).[9]

---

[9]Although Hornsberger has never been served and did not join in the New York State Defendants' motion, the Court makes this determination sua sponte pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(a).

CONCLUSION

Plaintiff's motion for appointment of counsel [#32] is denied.  Defendants' motion to dismiss [#13] is granted, Plaintiff's cross-motion to amend [#21] is denied, and this action is dismissed in its entirety, with prejudice.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).  Further requests to proceed on appeal in forma pauperis should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:  March 23, 2011
        Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

21